IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


DONALD WILSON,

                No. 1:16-cv-00879-HZ

     Plaintiff,

                OPINION & ORDER

  v.

COMMISSIONER SOCIAL
SECURITY ADMINISTRATION,

     Defendant.

Tim D. Wilborn
Wilborn Law Office, P.C.
P.O. Box 370578
Las Vegas, NV 89137

  Attorney for Plaintiff

Janice E. Hebert
Assistant United States Attorney
U.S. Attorney's Office, District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Sarah E. Moum
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Donald Wilson brings this action for judicial review of the Commissioner's final decision denying his application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. This Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c) (3)). The Commissioner's decision is reversed and remanded for further proceedings.

## PROCEDURAL BACKGROUND

      Plaintiff applied for SSI on May 2, 2012, alleging an onset date of January 1, 2001. Tr. 230.[1] His application was denied initially and on reconsideration. Tr. 140-43. On July 17, 2014, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 32-55. At the hearing, Plaintiff amended his alleged onset date to the date of his application, May 2, 2012. Tr. 39. On September 16, 2014, the ALJ found Plaintiff not disabled. Tr. 26. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

      Plaintiff alleges disability based on pain in his shoulders, lower back, left arm, knees, and hips. Tr. 39, 234. He also alleges that he had a head injury and suffers memory loss. Tr. 234.

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 9.

Plaintiff was 52 years-old at the time of the administrative hearing. Tr. 38. Plaintiff has a high school diploma and has not worked since approximately 2000. Tr. 40, 235.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *See, e.g., Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. 137 at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot

perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since May 2, 2012, the alleged onset date. Tr. 16. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: degenerative disk disease, degenerative joint disease, and alcohol abuse. *Id.* However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 17. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b), with the following limitations:

> [C]laimant is limited to no more than occasional climbing, kneeling, crawling, bilateral overhead reaching or crouching. The claimant is also limited to no more than frequent g[r]asping, gripping handling, fingering, and feeling with his left hand. The claimant would need to avoid concentrated exposure to unprotected heights, moving machinery and similar hazards, and is limited to simple, repetitive, routine tasks.

Tr. 19. The ALJ concluded that Plaintiff has no past relevant work. Tr. 25. However, at step five the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as assembler, mail clerk, and electronics worker. Tr. 26. Thus, the ALJ concluded that Plaintiff is not disabled. *Id.*

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the

4 - OPINION & ORDER

record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

The court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*; *see also Batson*, 359 F.3d at 1193. However, the court cannot not rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. *Bray*, 554 F.3d at 1225-26 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

## DISCUSSION

Plaintiff contends that the ALJ erred by (1) assigning little weight to the opinions of treating providers Dr. Rich, Dr. Haffner, and Nurse Practitioner Hughes; (2) finding Plaintiff not entirely credible; and (3) posing an invalid hypothetical to the Vocational Expert (VE). The Court finds that the ALJ erred in his treatment of the opinions of Dr. Rich and N.P. Hughes. Thus, the hypothetical posed to the VE was invalid.

### I. Plaintiff's Treating Providers

Social security law recognizes three types of physicians: (1) treating, (2) examining, and (3) nonexamining. *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001); *Lester v.*

*Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Generally, more weight is given to the opinion of a treating physician than to the opinion of those who do not actually treat the claimant. *Id.*; 20 C.F.R. §§ 1527(c)(1)-(2), 416.927(c)(1)-(2).

If the treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); *Holohan*, 246 F.3d at 1202. If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the ALJ must still articulate the relevant weight to be given to the opinion under the factors provided for in 20 C.F.R. §§ 1527(d)(2), 416.927(d)(2); *Orn*, 495 F.3d at 631. "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted).

A. Dr. Rich

Dr. Rich examined Plaintiff on May 28, 2013 and noted Plaintiff's "long history of traumatic injuries" from riding in the rodeo and motor vehicle accidents. Tr. 587. Dr. Rich noted Plaintiff's history of joint pain, joint swelling, and alcohol abuse. *Id.* Plaintiff overall appearance was described as "chronically ill-appearing." Tr. 590. Plaintiff reported moderate pain with motion in his lumbar spine and knees. Tr. 591. Dr. Rich assessed Plaintiff with polyarthritis, "other and unspecified chronic nonsuppurative otltl," and "alcohol abuse with alcohol-induced mental disorder." *Id.*

On August 2, 2013, Dr. Rich noted that Plaintiff continued to suffer from back pain which occasionally radiated to his legs and worsened with activity. Tr. 575. In addition, Dr. Rich

noted that Plaintiff's right knee pain had bothered him for years. *Id*. On June 23, 2014, Dr. Rich treated Plaintiff for hypertension and lumbago. Tr. 651. Four days later, Dr. Rich treated Plaintiff for arthritis pain. Tr. 646.

Dr. Rich submitted two Residual Function Capacity (RFC) opinions. In the first RFC, dated June 4, 2013, Dr. Rich opined that Plaintiff could sit for less than 6 hours in an 8-hour workday. Tr. 582. When asked about postural limitations, Dr. Rich found that Plaintiff could never do the following: climbing, balancing, stooping, kneeling, crouching, and crawling. *Id.* As to manipulative limitations, Dr. Rich indicated that Plaintiff could never reach, handle, finger, or feel. Tr. 583. Finally, Dr. Rich assessed Plaintiff with many environmental limitations, opining that Plaintiff could never be around the following: extreme cold, extreme heat, wetness, humidity, noise, vibration, fumes, or hazards. Tr. 583. Dr. Rich opined that Plaintiff is "unable to work" and diagnosed Plaintiff with polyarthritis and alcoholic encephalopathy. *Id.*

A year later, on June 27, 2014, Dr. Rich filled out the same RFC form. However, his opinion differed from his prior opinion in several ways. Notably, Dr. Rich included many more exertional limitations. Dr. Rich opined that Plaintiff could only lift less than 10 pounds, stand and/or walk for less than 2 hours in an 8-hour workday, and sit for less than 6 hours in an 8-hour workday. Tr. 635. Dr. Rich also found that Plaintiff is limited in his ability to push and pull with his lower extremities, he must periodically alternate sitting and standing to relieve pain or discomfort, and a "medically required hand-held assistive device is necessary for ambulation." *Id.* Dr. Rich assessed the same postural limitations as he did in June of 2013. However, his assessment of manipulative limitations was less restrictive. Instead of finding that Plaintiff could never reach, handle, finger, or feel, Dr. Rich opined that Plaintiff could do such things occasionally. Tr. 636. Furthermore, in contrast to the 2013 RFC, Dr. Rich did not assess Plaintiff

with any environmental limitations. Dr. Rich stated that Plaintiff's diagnosis was "osteoarthritis of the knees, hand, back, shoulders, and hip." *Id.* Once again, Dr. Rich opined that Plaintiff is unable to work. *Id.*

Because Dr. Rich's opinion is contradicted by evaluating physician Dr. Henderson and state agency physicians Dr. Pritchard and Dr. Meyers, the ALJ must provide specific and legitimate reasons, supported by substantial evidence, to discount Dr. Rich's opinion. *See Bayliss*, 427 F.3d at 1216. The ALJ assigned "little weight" to Dr. Rich's opinions for two reasons. First, "no objective testing accompanied the report and Dr. Rich did not provide any narrative as supporting evidence, particularly concerning the need for an assistive device." Tr. 22. Second, Plaintiff's "activities of daily living also show that he is far more functional [than] indicated by Dr. Rich." *Id.*

The ALJ's explanation for rejecting Dr. Rich's opinions due to a lack of objective testing is insufficient. "A blanket statement that a medical opinion is not supported by enough objective data 'does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim.'" *Dunn v. Sullivan*, 962 F.2d 13 (9th Cir. 1992) (quoting *Rodriguez v. Bowen,* 876 F.2d 759, 762 (9th Cir. 1989)); *see also Kinzer v. Colvin,* 567 F. App'x 529, 530 (9th Cir. 2014) (insufficient for ALJ to conclude that treating doctor's opinion was "not well-supported by the . . . other objective findings in the case record"). Defendant cites *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) for the proposition that an "ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." However, in *Chaudhry*, the ALJ properly rejected a medical opinion as inconsistent with clinical findings by pointing to specific findings in the record and opinions of

several other medical providers. *Chaudhry*, 688 F.3d at 671. Here, the ALJ did not provide any such explanation or support in the record.

The ALJ also erred by discounting Dr. Rich's opinions due to alleged conflicts with Plaintiff's activities of daily living. The ALJ concluded that Plaintiff can perform a full range of daily activities:

> In the claimant's adult function report, he described preparing simple meals, he completed light household chores, such as house cleaning, laundry, mowing, raking, and planting flowers, he was able to walk and use public transportation, and he shopped in stores for food, clothing and personal items. His hobbies included beading, willow work, leatherwork, making baskets, hats, jewelry, and pottery. Occasionally, he attended church.

Tr. 20-21. In addition, the ALJ noted that that Plaintiff's testimony reflected his ability to perform the following activities: complete chores (although he sometimes required help); use public transportation, attend church or an Indian gathering, occasionally; watch movies; and read. Tr. 21.

Plaintiff correctly points out that his hearing testimony qualified his ability to do some of his hobbies. Plaintiff told the ALJ that he had quit beading and his other hobbies because of pain, arthritis, and cramping in his hands. Tr. 41, 46. In addition, while Plaintiff reported that he could perform some household chores, he also noted that he could only do those when he was able to move without pain, cramps, or spasms. Tr. 252, 440-41. As to the remaining daily activities listed by the ALJ, the Court agrees with Plaintiff that they do not require abilities in excess of what Dr. Rich described.

In sum, neither of the reasons that the ALJ discounted Dr. Rich's opinion is specific and legitimate, supported by substantial evidence in the record. Thus, the ALJ erred.

B. Dr. Haffner

Dr. Haffner submitted a letter on July 7, 2014, in which he stated that he had treated Plaintiff for over a year for multiple traumas. According to Dr. Haffner, Plaintiff has obvious damage to his forearm, including "chronic recurrent pain in the mechanically deformed areas of his forearm as well as both hand and forearm pain with repetitive use." Tr. 661. Dr. Haffner also noted "significant bilateral knee disease" and wrote that Plaintiff's "left knee is frankly unstable from what clinically is torn cruciate ligaments." *Id.* The combination of Plaintiff's knee and forearm injuries would preclude Plaintiff from doing jobs that require standing, walking, or repetitive use of his hands. *Id.*

Dr. Haffner opined that Plaintiff has signs of severe PTSD that would make him resistant to treatment and unable to function in an ordinary work environment due to his inability to concentrate. *Id.* Dr. Haffner described traumatic incidents in Plaintiff's past, such as the violent death of his father and step-father. *Id.*

The ALJ assigned "little weight" to Dr. Haffner's assessment. According to the ALJ, "Plaintiff's activities of daily living and treatment history do not support" Dr. Haffner's opinion. Tr. 24. In addition, the ALJ found that Dr. Haffner's assessment was not consistent with the consultative examination of Dr. Henderson, to which the ALJ assigned significant weight. *Id.* The ALJ also noted that most of Dr. Haffner's evaluation was based on Plaintiff's self-reporting of his symptoms. *Id.*

As with Dr. Rich, the ALJ did not point to any specific daily activities that allegedly conflict with Dr. Haffner's opinion. This Court does not find any conflict and, thus, does not affirm this reason for discounting Dr. Haffner's opinion. However, the Court affirms the ALJ's

decision to discount Dr. Haffner's opinion because it conflicted with Dr. Henderson's opinion and was based on Plaintiff's self-reports.

As to the conflict with Dr. Henderson's evaluation, Plaintiff argues that the ALJ should not have compared the two opinions because Dr. Haffner was Plaintiff's treating doctor and Dr. Henderson was a one-time consultative examiner. Plaintiff offers no legal support for this argument. Plaintiff does not dispute that Dr. Henderson's opinion was based on his objective evaluation. "Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). Therefore, the ALJ properly considered Dr. Henderson's opinion.

In addition, the ALJ properly discounted Dr. Haffner's opinion because it was primarily based on Plaintiff's self-reporting of symptoms. "A treating or examining physician's opinion may be rejected if based on an uncredible claimant's subjective reports." *Furgerson v. Colvin*, No. 6:15-CV-02136-HZ, 2016 WL 6647934, at *10 (D. Or. Nov. 9, 2016) (citing *Bayliss*, 427 F.3d at 1217 (ALJ did not err in rejecting opinions based on subjective complaints)). As discussed below, the ALJ properly discounted Plaintiff's credibility.

In sum, the Court affirms the ALJ's decision to assign little weight to Dr. Haffner's assessment. The ALJ gave specific, legitimate reasons supported by substantial evidence.

C. Nurse Practitioner Hughes

N.P. Hughes conducted a series of 11 functional capacity reports between July of 2005 and March of 2012. In these reports, N.P. Hughes opined that Plaintiff could use his hands for reaching, handling, and fingering only occasionally, and was unable to sustain work. Tr. 413-36.

Nurse practitioners are considered "other sources." 20 C.F.R. § 404.1513(a) & (d)(1); *Britton v. Colvin,* 787 F.3d 1011, 1013 (9th Cir. 2015) (per curiam). The ALJ may discount testimony from these "other sources" if the ALJ gives reasons germane to each witness for doing so. *Dale v. Colvin*, 823 F.3d 941, 943 (9th Cir. 2016).

Here, the ALJ assigned "little weight" to N.P. Hughes' assessments because they were all performed prior to the amended alleged onset date. Thus, the ALJ determined that the assessments were "not particularly relevant to the period at issue." Tr. 21. In addition, the assessments were not supported by any objective evidence and "were likely based on the claimant's subjective complaints." *Id.* In addition, the ALJ found the assessments inconsistent with Plaintiff's activities of daily living. *Id.*

As with Dr. Rich and Dr. Haffner, the Court does not find N.P. Hughes' assessed limitations to be inconsistent with Plaintiff's activities of daily living. The other reasons provided by the ALJ are similarly unavailing.

Defendant is correct that the Ninth Circuit has stated: "Medical opinions that predate the alleged onset of disability are of limited relevance." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). However, in *Carmickle*, the medical opinion at issue was provided at a time when the claimant "was working two jobs that he never indicated having trouble performing before his on-the-job injury." *Id.* The Court explained that such an opinion was of limited relevance, especially in a situation, such as *Carmickle*, where the disability was allegedly caused by a discrete event. *Id.* In this case, on the other hand, the primary alleged disabilities are degenerative disc and joint diseases, related to injuries and accidents Plaintiff suffered beginning in the 1980s and 1990s. *See* Tr. 277-350 (records of surgeries and hospitalizations for such injuries). Furthermore, N.P. Hughes' most recent assessment was only

two months before the alleged onset date. Therefore, the Court finds that *Carmickle* is inapposite. *See, e.g.*, *Bussing v. Colvin*, No. 2:14-CV-305-RHW, 2016 WL 676399, at *7 (E.D. Wash. Feb. 18, 2016) ("In the case of ongoing impairments . . . as opposed to impairments caused by a discrete event, earlier records may be relevant the closer they are in time to the alleged onset date."); *Clouse v. Colvin*, No. 2:14-CV-0156-VEB, 2015 WL 1809697, at *7 (E.D. Wash. Apr. 21, 2015) (noting that evidence that pre-dates the alleged onset is more likely to have limited relevance when it is truly remote from the alleged onset date and/or disability is allegedly caused by a discrete event.).

The Court also rejects the ALJ's conclusion that N.P. Hughes' assessments were not supported by any objective evidence and "were likely based on the claimant's subjective complaints." As Plaintiff points out, the record contains 100 pages of treatment notes, x-rays, and MRI findings, many of which correspond with and support N.P. Hughes' RFC assessments. For example, an x-ray of Plaintiff's lumbar spine on March 6, 2012 revealed:

> First degree spondylolisthesis of L5 on S1 with severe degenerative disc narrowing at L5-S1. Mild degenerative disc narrowing at L1-2. Otherwise, negative acute lumbar spine series.

Tr. 546. The next day, N.P. Hughes opined on an RFC that Plaintiff would be unable to maintain employment due to his severe spondylolisthesis. Tr. 414. Similarly, on December 30, 2008, N.P. Hughes treated Plaintiff for chronic joint and back pain; the same day, N.P. Hughes opined that Plaintiff's pain rendered him unable to maintain steady employment. Tr. 424, 482. In sum, the ALJ failed to provide germane reasons to reject N.P. Hughes' assessments.

## II.     Plaintiff's Credibility

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for rejecting his testimony about his impairments and their limiting effects. In assessing the

credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. 20 C.F.R. § 404.1529. First, the ALJ determines whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). If such evidence exists, and barring affirmative evidence of malingering, the ALJ must give clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Id.* at 1284; *see also Lingenfelter*, 504 F.3d at 1036. If the record contains affirmative evidence of malingering, the ALJ need only provide specific and legitimate reasons for an adverse credibility finding. *Morgan v. Comm'r*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ may consider many factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). In addition, conflicts between a claimant's testimony and the objective medical evidence in the record can undermine a claimant's credibility. *Morgan*, 169 F.3d at 600. Where the ALJ's credibility findings are supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). However, a general assertion that plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993); *see also Morgan*, 169 F.3d at 599.

Plaintiff testified that he is unable to work due to cramps, aches, and pain in his joints, hips, and back. Tr. 39-40. He also testified that he has daily, painful cramps in his hands. Tr. 46, 47.

The ALJ found Plaintiff "not entirely credible" because his allegations of disability are "not reasonably consistent with the medical evidence." Tr. 20. The ALJ also found that Plaintiff's problems with alcohol use suggested that he had contributed, at least in part, to his ongoing issues. The ALJ also found that secondary gain issues may be present. In addition, the ALJ found that Plaintiff's daily activities were inconsistent with the nature and severity of his subjective complaints. The ALJ also noted that Plaintiff had a "very poor work history," which "raises some questions as to whether the current unemployment is truly the result of medical problems." Tr. 21.

The ALJ provided substantial evidence to support his conclusion that Plaintiff's allegations are not consistent with the medical evidence, although some of the examples provided by the ALJ are more equivocal than he acknowledged. For example, the ALJ points to a March 2012 treatment note that indicates Plaintiff had full range of motion with flex, extension, lateral, and rotational movements. Tr. 468. However, the note also states that Plaintiff has chronic back pain and x-rays showed some arthritic changes to the hips. *Id.* Other of the examples provided by the ALJ more clearly demonstrate inconsistencies with Plaintiff's allegations of disability. *See* Tr. 578 (only "mild pain" with motion of spine and knee); Tr. 565 ("no acute complaints today"); Tr. 651 ("Stable. No worsening in his symptoms."). While Plaintiff offers an alternative interpretation of the evidence, the Court must uphold the ALJ's interpretation because it is reasonable. *See Tommasetti*, 533 F.3d at 1038 ("The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation.").

Similarly, the ALJ offered a reasonable interpretation of the evidence that Plaintiff reported significant psychological issues in June of 2014, despite no previous treatment or evidence in the record. The ALJ suggests that Plaintiff may have been attempting to portray more extensive limitations than are actually present in order to increase the chance of obtaining benefits. Once again, Plaintiff offers an alternative explanation, arguing that he had not previously sought treatment for his trauma because he could not bring himself to discuss the triggering events. When presented with more than one rational interpretation of the evidence, this Court must defer to the ALJ.

The ALJ also correctly noted that Plaintiff's overall poor work history raised questions as to whether his current unemployment is the result of medical problems. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (affirming ALJ's negative conclusions about the claimant's credibility given her "extremely poor work history" and showing of "little propensity to work in her lifetime").

However, the remaining reasons given by the ALJ are unsupported by substantial evidence in the record. While the ALJ is correct that Plaintiff has suffered injuries that occurred while he was intoxicated, the Court fails to see how this weighs on Plaintiff's credibility regarding the intensity, persistence, and limiting effects of his symptoms.[2] In addition, as stated above, Plaintiff's reports of daily activities do not conflict with his alleged limitations.

Nevertheless, even though not all of the reasons provided by the ALJ are supported by substantial evidence, the overall credibility assessment is proper. The ALJ's error as to Plaintiff's alcohol use and daily activities does not negate the validity of the adverse credibility finding.

---

[2] The ALJ does not find that Plaintiff offered conflicting or inconsistent testimony concerning alcohol use, which could form the basis for an adverse credibility finding. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006).

*See, e.g.*, *Carmickle*, 533 F.3d at 1163 (upholding ALJ's overall credibility finding despite some errors in reasoning). The inconsistency with the medical evidence, the potential for secondary gain, and Plaintiff's poor work history are all clear and convincing reasons, supported by substantial evidence, to discount the weight assigned to Plaintiff's testimony.

### III. Remand for Further Administrative Proceedings

Because the ALJ erred in his consideration of Dr. Rich and N.P. Hughes' opinions, the Court concludes that remand is appropriate. In social security cases, remands may be for additional proceedings or for an award of benefits. *E.g., Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (explaining that if "additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded [,]" but "in appropriate circumstances courts are free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits") (internal quotation marks omitted); *Banks v. Colvin*, No. 3:14-CV-01306-HZ, 2015 WL 4628031, at *6 (D. Or. Aug. 3, 2015) (explaining that remanding for additional proceedings is the ordinary and "proper course," except in rare circumstances) (quoting *Treicher v. Comm'r*, 775 F.3d 1090, 1101 (9th Cir. 2014)).

To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Id.* at 1020; *see also Treicher*, 775 F.3d at 1100 (2014) ("credit-as-true" rule has three steps). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020. Second, the record must be fully developed and further administrative proceedings would serve no useful purpose. *Id.* Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.*; *see also Treicher*, 775 F.3d at 1101 (when all three elements are

met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule" of remanding to the agency).

The first part of the test is met here because, as explained above, the ALJ committed several legal errors in his analysis of Plaintiff's application for benefits. The next question is whether additional administrative proceedings would be helpful. In evaluating this issue, a court considers "whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules." *Treicher*, 775 F.3d at 1103–04.

Here, additional administrative proceedings are necessary. While the ALJ failed to properly evaluate the medical opinion of Dr. Rich or N.P. Hughes, their opinions remain in conflict with other medical opinions in the record. The Court is unable to say whether or not the RFC accurately represents Plaintiff's abilities. In other words, Plaintiff's entitlement to benefits is far from "clear under the applicable legal rules." *See id.* Accordingly, a remand for additional proceedings is required to allow the ALJ to address the errors and ambiguities detailed above.

In addition, the ALJ may need to conduct a materiality analysis to determine whether Plaintiff's alcohol use is a contributing factor material to disability. *See* C.F.R. § 416.935; *Soc. Sec. Ruling, Ssr 13-2p.; Titles II & Xvi: Evaluating Cases Involving Drug Addiction & Alcoholism (Daa)*, SSR 13-2P (S.S.A. Feb. 20, 2013). While the Court is aware that Plaintiff's primary allegations of disability are based on physical pain and chronic conditions due to injuries and accidents, Plaintiff also alleges PTSD and problems with memory and concentration. As the ALJ noted, "[c]omplicating the claimant's problems is his alcohol use." Tr. 20. The ALJ will have to determine, after properly assessing the medical opinions and evidence, whether a materiality analysis is necessary.

## CONCLUSION

The Court reverses and remands the case for further administrative proceedings because the ALJ erred by rejecting the opinion of Dr. Rich and N.P. Hughes.

IT IS SO ORDERED.

Dated this __24__ day of __April__, 2017

_____
MARCO A. HERNÁNDEZ
United States District Judge